**GEORGIA POWER COMPANY**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION.**

No. 11858.

United States District Court
N. D. Georgia,
Atlanta Division.

Aug. 9, 1968.

William B. Paul, Fred W. Elarbee, Jr., Constangy & Prowell, Atlanta, Ga., for plaintiff.

Daniel Steiner, General Counsel, David Cashdan, Attorney, Equal Employment Opportunity Commission, Washington, D. C., for defendant.

SIDNEY O. SMITH, Jr., Chief Judge.

This is a proceeding under the Fair Employment practices provisions of the Civil Rights Acts, wherein the Equal Employment Opportunity Commission ("the Commission") seeks to exercise the discovery powers upon the filing of a charge by Neloise R. Adkins as contained in 42 U.S.C.A. § 2000e-9(a). As permitted by subsection 9(c), the Georgia Power Company ("the petitioner") has filed its objections, timely made, to the production and examination of the information sought by the demand.

The formal demand, dated May 8, 1968, (EXHIBIT "A" to petition), insofar as its pertinent parts seeks:

1. List of all persons presently employed by Respondent in the Customer Service and Data Processing Departments in its Atlanta facilities. Said list to include the following information for each employee:

    (a) Name, race and sex

    (b) Date of hire, and date of entry into these departments

    (c) Classification or job title

(d) Test score of each such employee.

2. A copy of the following documents for Mrs. Neloise R. Adkins:

    (a) Application for employment

    (b) All tests administered to her

    (c) The test scores for each test.

3. A copy of the following documents for all persons hired in or who entered into the Customer Service and Data Processing Departments from May 29, 1967 to November 29, 1967:

    (a) Application for employment

    (b) All tests administered to each such person

    (c) The test score for each such test.

4. A copy of the job descriptions for all entry level positions in the Customer Service and Data Processing Departments in effect during the period from May 29, 1967 to November 29, 1967.

5. Any additional documents in the custody or control of Respondent, Georgia Power Company, which reflect the information requested by the United States Equal Employment Opportunity Commission in this Demand.

Petitioner's objections are specified, as required, in paragraphs 7, 8, 9, 10, 11. In the main, they relate to relevancy, scope, and burdensomeness. At the hearing there were extensive stipulations of fact filed by the parties. The authenticity of the documents attached to the petition and response were agreed upon, and oral testimony was likewise received by the court. Briefs have been submitted and the application to set aside or for modification is now ready for determination by the court.

Following such procedure, the objections fall into two main categories (Petitioner's Brief, p. 1).

(1) "At the time of the Demand there was no timely charge pending which gave the right to any evidence demanded." This ground includes the lack of an oath on the original charge and its timeliness.

(2) "The Demand is unduly broad in scope and for that reason also the Commission is not entitled to access to most of the evidence it seeks." This ground includes the question of relevancy, of job application scope, and of burdensomeness.

As revealed by the evidence and stipulations, the complainant made job application on July 31, 1967. While the written application referred to a job as Customer Service Representative, she at the same time orally inquired as to a position in Data Processing, having only recently graduated from a training program in that field. The personnel assistant at that first interview informed the applicant that there were no vacancies at data processing. She was tested on August 10, 1967, and on August 11, 1967, her application was denied.

On August 29th, 1967, the Commission received a handwritten unsworn complaint (the original of which was made available to petitioner at trial) reciting her charges against this and other employers.

The charge was processed by the Commission and in accordance with its regulations was redrafted on an agency form and sworn to on November 16, 1967. This "charge" was served on the company on November 23, 1967. Correspondence and conferences relating to investigation of the charge failed to produce agreement by the parties on discovery, resulting in this demand for discovery on May 13, 1968.

(1) *Timeliness.*

The argument advanced by petitioner is to the effect that there was no "charge" "in writing under oath" "filed within ninety (90) days after the alleged unlawful employment practice occurred" on August 11, 1967. 42 U.S.C.A. § 2000e–5(a) (d) (e). This alleged failure is deemed to be jurisdictional to this proceeding or to any subsequent court action on the complaint.

    There is no question here but that the action complained of was "isolated", as opposed to "continuing" and,

in fact, occurred on August 11, 1967. While the unsworn charge in writing was received on August 29, 1967, the sworn charge of November 16, 1967, was more than 90 days after the isolated transaction.

■ Stated in practical terms, the question before the court is whether a complaint in writing timely received may be amended after the 90-day period so as to meet the requirements of 42 U.S. C.A. § 2000e–5(a). The court holds that such procedure is permissible.

There are practical as well as legal reasons for this conclusion. From the court's observation thus far, the average complainant is not initially represented by counsel, has no knowledge of the niceties of the statute, and generally makes his "charge" in a crude home-made fashion. As in the case of prisoner's petitions, the courts should not be overly technical or strict as to form in such instances. To carry the present argument to the extreme would deny the Commission the power to process or investigate the complaint at all under such circumstances.

To the contrary, it would appear that it is the Commission's duty to process the complaint fashioning specifics from generalities, testing its reliability, and endeavoring to conciliate a bona fide grievance. Unfortunately, these efforts are sometimes cursory and the court has already expressed displeasure at the number of litigated cases filed in court without the conscientious effort to prevent litigation inherent in the statute. Such failures uniformly occur not because of any demonstrated lack of effort or sincerity but from the sheer burden of complaints for a limited staff. It would be grossly unfair to charge any citizen with a delay thus occasioned. See Evenson v. Northwest Airlines, Inc., 268 F.Supp. 29 (E.D.Va.1917); Mondy v. Crown Zeller-bach Corp., 271 F.Supp. 258 (E.D.La. 1967). Can there be any justification in the denial of jurisdiction when the charge was timely filed, but could not be processed or "put in form" for 95 days? The court thinks not.

Moreover, there is long-standing authority, both state and federal, to the effect that verification is an amendable defect, even for technical common-law pleadings much less a citizen-drawn statement of grievance. As the courts seek to adopt workable procedures in this new field of litigation, it would appear that this long-standing practice be followed and the absence of an oath not destroy jurisdiction. E. g., Johnston Broadcasting Co. v. F.C.C., 85 U.S.App. D.C. 40, 175 F.2d 351 (1949); Neal v. Davis Foundry & Machine Works, 131 Ga. 701, 63 S.E. 221; 71 C.J.S. Pleading § 343 ff.[1]

■ Thus, it is ruled that, while the filing of a written charge within 90 days is jurisdictional, it may be amended as to form thereafter, including the supplying of a verification or oath. The Commission's regulations authorizing such procedure appear to be reasonable and the demand here does not fail in this respect.

*(2) Relevancy and Scope.*

Having determined that the discovery demand under 42 U.S.C.A. § 2000e–9(a) could be placed upon petitioner, the next inquiry is its scope. The statutory limitation is "to require the production of documentary evidence *relevant or material* to the charge under investigation." In certain respects, the present demand exceeds such limitations.

■ Firstly, the law does not compel the compilation or preparation of any research or summary by any employer, but only that the documents in question be made available for examination and/or

---

1. Apparently in accord in fair employment cases are the results already reached in Weeks v. Southern Bell Tel. & Tel. Co., 277 F.Supp. 117 (S.D.Ga.1967); Le-Blanc v. Southern Bell Tel. & Tel. Co., No. 67–573, E.D.La.1967; Roig v. South-ern Bell Tel. & Tel. Co., No. 67–574; Blue Bell Boots, Inc. v. EEOC, No. 5035, M.D.Tenn.1968. Apparently contra is Choate v. Caterpillar Tractor Co., 274 F.Supp. 776 (S.D.Ill.1967).

954

copying. This is in keeping with traditional standards of discovery. See 4 Moore, Federal Practice, ¶ 33.20. E. g., Aktiebolaget Vargos v. Clark, D.C., 8 F.R.D. 635. In practice, such preparation or the furnishing of copies is oftentimes less burdensome than the time involved in office inspection. However, if there is any dispute in this regard, such holding may clarify it.

■ As stated the court finds that the areas of Customer Service and Data Processing are relevant to the original complaint. However there must be reasonable limitations as to time, space and scope. The parties are in agreement that the Atlanta area is a proper limitation geographically. While there are 17 Customer Service locations with 263 employees and one Data Processing location with 84 employees embraced in the area, all personnel records are maintained at one central office. Thus, the numbers involved do not render the demand burdensome.

■■ Timewise there should be reasonable limitations also. The court agrees with the Commission that the effective date of the Act is not the proper test, nor is the statute of limitations built thereon. On the other hand, whatever was done 10, 20, or 30 years ago by an established company could not illustrate the violation of this new right created by Congress in 1964, nor would statistics of such ancient vintage have relevancy or probative value. In such circumstances, the court limits the demand to a five year period prior to the alleged violation. Any date thus fixed is admittedly arbitrary. However, such period is deemed to be reasonable for the normal case absent some special showing of the need and relevancy of a longer period. None is present here. In scope, there are obvious limitations. Union Bank v. Equal Employment Opportunity Commission, C.D.Cal.1967, 296 F.Supp. 313. Thus, there is no need to produce the information regarding executives of the company. The test score of the President, for example, could have

no relevancy to this complaint. Normally, the information regarding supervisory personnel would likewise be irrelevant in a company of this size. Nor would information regarding "vertical movement" to supervisory positions be relevant on a grievance of failure to hire. While such information regarding supervisors might be appropriate on the complaint of a present employee it could illustrate nothing at the entry position. Accordingly, the demand is also limited to non-supervisory personnel records.

As to Demand No. 1, the information requested is limited to the Atlanta Area beginning August 11, 1962, and to the personnel already prescribed.

Assuming jurisdiction, there is no dispute as to Demand No. 2 and Demand No. 3.

■■ As to Demand No. 4, petitioner contends that it has no job descriptions as such. Utmost good faith is required in all discovery matters on pain of contempt. Cardox Corp. v. Olin Mathieson Chemical Corp., D.C., 23 F.R.D. 27; Novick v. Pennsylvania R. Co., D.C., 18 F.R.D. 296. Such information insofar as it exists, through titles, classifications, published duties, etc. as well as formal job descriptions is therefore to be produced.

■ As to Demand No. 5, the Commission's justification is that it operates as a catch-all to avoid the problem of mislabeling in the demand. Having pointed out that good faith is required on a specific demand, there is no need or place for a general demand and such practice is contrary to existing federal discovery procedures. 4 Moore, Federal Practice, ¶ 34.07; E. g., Roebling v. Anderson, 103 U.S.App.D.C. 237, 257 F. 2d 615 (1958); Greene v. Raymond, D. C., 41 F.R.D. 11(7). Accordingly, Demand No. 5 is deemed too broad and vague to require compliance. The decision in EEOC v. Overnite Transportation Company, No. 11178 this District; (397 F.2d 368, Fifth Circuit) never reached the question of relevancy, but

only that of timely objection, and is not authority to the contrary.

As thus modified, the demand is allowed and the information requested shall be furnished at a time and place agreed upon by the parties, failing which the court will prescribe.

It is so ordered.