164 N.J. Super. 77 (1978)
395 A.2d 870
CAROLINE HEBARD, COMPLAINANT-RESPONDENT,
v.
BASKING RIDGE FIRE COMPANY NO. 1; R.A. LIDDY AND E.J. DELGADO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 24, 1978.
Decided November 24, 1978.
*78 Before Judges MATTHEWS, KOLE and MILMED.
Messrs. Kearns & Coyle, attorneys for appellants (Mr. Robert C. Coyle, of counsel; Mr. William J. Kearns on the brief).
Mr. John J. Degnan, Attorney General of New Jersey, attorney for respondent (Ms. Erminie Conley, Deputy Attorney General, of counsel; Mr. Kenneth I. Nowak on the brief).
PER CURIAM.
Defendant Basking Ridge Fire Company, No. 1 (Company),[1] appeals from a determination and order of the Director of the Division on Civil Rights finding it in *79 violation of the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("the law").
The determination and order resulted from the company's denial of an application for membership to complainant Caroline Hebard (Hebard) on the ground that membership was limited exclusively to males. Hebard made repeated attempts to obtain an application between September 1973 and the time that she filed her complaint on April 25, 1974 with the Division on Civil Rights.
The company, a volunteer fire department, is incorporated as a nonprofit entity. As such it is responsible for its operations and has the right to buy and sell real estate and other property. The firehouse, the land upon which it is located and the other property maintained by the company are all owned by it. Upon dissolution of the company the profits from the sale of the assets would be distributed among the members. It is funded principally through periodic appropriations from the municipality and from the proceeds of fund-raising activities.
The company holds, by way of social activities, a few picnics each year and an annual dinner dance, but it is not a social club. Members of the public do not have access to the company premises, but from time to time the building is made available for use to nonmembers free of rent.
Township ordinances established the company, along with the Liberty Corners Squad, as the municipal fire department. The township ordinances provide for, among other things, annual appropriations to the company, workers' compensation for the members, inspection by the township committee of the company, its property and personnel, approval by the township committee of new members, notification to the township committee of the names of the company's members and officers, and rules under which the company, its officers and members must operate.
Membership in the company is limited exclusively to males. An applicant seeking membership must be nominated *80 by three members in order to be considered therefor. After passing the initial investigatory stage during which the applicant submits a biographical form and a physical test record attesting to general good health, the applicant is admitted as a probationary member for a one-year period. During this time the applicant performs duties commensurate with the extent of his training and level of proficiency, and is simultaneously evaluated in terms of physical and mental ability to perform as a fire fighter. At the end of the year, the applicant is considered for full membership in the company.
At the hearing, among other things, considerable proof was adduced relating to the ability of women to perform as fire fighters. Based on the evidence before him the hearing examiner essentially found:
(1) The company is subject to the Law both as a public accommodation within the meaning of N.J.S.A. 10:5-5(1) and as an employer within the meaning of N.J.S.A. 10:5-5(e).
(2) The complaint was not barred by the statute of limitations set forth in N.J.S.A. 10:5-18.
(3) Hebard was illegally discriminated against by the company because of her sex when, on or about September 22, 1973 and continuing to at least March 27, 1974, she was denied an equal opportunity to obtain membership in the company in spite of her qualifications in violation of N.J.S.A. 10:5-12(a) and 10:5-12(f).
(4) Sex is not a bona fide occupational qualification for membership in the company, as that exception is defined in N.J.S.A. 10:5-12(a).
(5) The company is not in its nature reasonably restricted exclusively to individuals of one sex, within the meaning of N.J.S.A. 10:5-12(f).
(6) The company should be ordered to offer probationary membership in the company to Hebard. Because of the strong feeling among the members of the company *81 against permitting any women into membership by reason of their sex, and because many of those members have testified to their feeling that there are no conditions under which they could consider her qualified for membership, the Director should establish a procedure for objective evaluation of her performance as a probationary member and her qualifications for full membership, which would not be dependent upon any vote of the membership or the unreviewable evaluation of any superior officer or member or members of the company.
(7) The Director should establish any necessary procedures to govern the future processing of applications of the public for membership in the company which should insure that future acts of discrimination against other persons are not committed.
The Director concurred in these findings, except that since Hebard was no longer within the geographical area served by the company, the latter was relieved of the obligation of offering membership to her. Accordingly, among other things, the Director ordered the company:
(1) To cease and desist their violation of the law.
(2) To change existing policies regarding the exclusion of women, granting them the same advantages as previously offered to men.
(3) To submit its rules regarding this subject to the Division for approval over the next two years.
(4) Not to engage in any retaliatory conduct.
(5) To amend its constitution and by-laws generally so as to comply with what constitutes substantially the provisions of N.J.A.C. 13:12-1.1, which provides membership procedures for volunteer fire companies and first aid squads, effective June 25, 1974.[2]

*82 (6) To announce quarterly for one year that it welcomes all qualified women and men for membership.
(7) To forward copies of documents containing membership data and announcements over the next two years.
The company appeals from the order and findings (hereafter, sometimes, "the order") by the Director, claiming error for the following reasons:
(1) The complaint is barred by the statute of limitations.
(2) The company does not come within the jurisdiction of the Division on Civil Rights as it is neither an "employer" nor a "place of public accommodation" and is merely a fraternal organization.
(3) Liddy and Delgado are not proper parties.
(4) It was plain error to bar one of the company's witnesses from testifying with respect to biomechanics.
(5) The findings of fact and conclusions are not supported by the evidence.
(6) Classification by sex here is reasonable under the law and this "contention was not faced or rebutted by the State."
(7) The complaint should have been dismissed at the end of the State's case.
(8) The order constitutes a taking without just compensation, in violation of the 14th Amendment to the United States Constitution and goes "beyond the matters in controversy."
(9) The order mandates involuntary servitude in violation of the 13th Amendment of the United States Constitution.
We have carefully reviewed the record below in the light of applicable law. Except as herein otherwise stated, we are satisfied that there is no merit to any of the company's contentions and that the Director's order, and the findings and determinations on which they are based, are *83 correct and supported by sufficient credible evidence in the record as a whole. We affirm the order essentially for the reasons expressed by him and the hearing examiner's report on which the order is predicated. See Jackson v. Concord Co., 54 N.J. 113, 117-118 (1969).
The company is an "employer" within the meaning of the law and subject to the provisions thereof relating to employment discrimination. It is not within the statutory exclusion as a nonprofit social or fraternal club or corporation. See Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55 (1978); Blair v. Freehold Mayor and Council, 117 N.J. Super. 415 (App. Div. 1971), certif. den. 60 N.J. 194 (1972).[3] See also, Pelliccioni v. Schuyler Packing Co., 140 N.J. Super. 190, 199 (App. Div. 1976); In re Brennan, 126 N.J. Super. 368, 373-374 (App. Div. 1974).
Some comment is in order on whether Blair, supra, is determinative of the company's status as an employer under the law. In Blair the volunteer fire company plainly appeared to be part of the municipal government, and the order apparently was directed to the municipality and the "fire department" as the employer. See 117 N.J. Super. at 417. We see no appreciable distinction in this respect between the present case and Blair.
The company, by virtue of municipal ordinances, is municipal in nature, subject to the township governing body and ordinances. The township provides approximately 20% of the company's funding and provides workers' compensation for the members. These indicia of control, both fiscal and supervisory, warrant the conclusion that the members of the company are, in effect, employees of the township, *84 as well as of the company, notwithstanding the fact that the members are not paid.
The fact that the municipality is not a party to this proceeding does not militate against the conclusion that the company is likewise an employer subject to the law. The company itself, which maintains substantial control over the members in their functions and supplies benefits to them, is also properly viewed as an employer. See In re Brennan and Pelliccioni v. Schuyler Packing Co., both supra.
This conclusion is unaltered by the company's claim that it is a nonprofit fraternal or charitable corporation. In light of the nature of the company as a municipal fire service, it cannot be realistically viewed as a fraternal or charitable organization. To do so would enable municipalities to avoid and undermine the law with respect to providing municipal services merely by structuring the providers thereof in a fashion similar to that found here. See Blair, supra, 117 N.J. Super. at 418.[4]
There is, however, one infirmity in the Director's order. Section 9(d) (§ 9(d)) thereof provides that the company shall:
Require all members in order to retain their membership in Respondent Fire Company, to meet the same qualifications which are established pursuant to (c) above.
Section 9(c) (§ 9(c)) of the order, referred to above, states that the company shall:
Establish objective qualifications for membership which relate directly and solely to the physical and technical ability of an applicant *85 to perform the vocational duties of a volunteer Fire Company squad member * * *.
These two provisions, sensibly read together, require the company to requalify all of its existing members, regardless of duration of membership, on the basis of the objective occupational standards established pursuant to § 9(c) of the order. In effect, § 9(d) would apply the new membership standards retroactively. It would compel requalification of members who have long since satisfied prior membership criteria.
We have concluded that on the facts herein presented the Director has no statutory authority thus to apply the law retroactively. Accordingly, the order must be modified so as to delete § 9(d).
The authority of the Director to fashion remedies for violations of the law is found in N.J.S.A. 10:5-17. While the grant of authority contained therein is generally broad, "the statutory language refers to future action to cure a wrong to an individual." Lige v. Montclair, 72 N.J. 5, 18 (1976). As the court in Lige observed:
This broad remedial affirmative power includes the right to take positive action which will operate prospectively to eliminate and prevent unlawful discrimination. * * * In every case where the remedial authority of N.J.S.A. 10:5-17 has been used, the sanction has been applied to correct an injustice to an individual which has occurred and to be assured that no future discriminatory acts will take place. [at 17]
We note in passing that the court in Lige did leave open the possibility that in certain cases the Director's actions in eliminating or reducing the results of prior discrimination in favor of a class generally would be appropriate under the statute. 72 N.J. at 18. This, however, is not such a case. Fires pose great risks to the victims and combatants thereof, as well as to the community. The preservation of existing fire companies, with experienced personnel, is a matter of significant public importance. The operation of § 9(d) may *86 very likely result in the loss to the company of many of its senior members, along with the valuable experience, guidance, example and sense of stability which they provide. In such circumstances, a retroactive remedy is clearly inappropriate.
The Director claims, however, that § 9(d) is necessary to insure that the membership standards promulgated pursuant to § 9(c) will be job-related, and that, accordingly, § 9(d) is a remedy within his powers under N.J.S.A. 10:5-17. The argument is unpersuasive. Section 9(c), which directs the establishment of objective job qualifications for membership relating solely and directly to the ability to perform the duties of a fire fighter, is sufficient for this purpose. The order as a whole, without § 9(d), will assure compliance with the law by the company.
Nor do we find anything in the provisions of N.J.A.C. 13:12-1.1, upon which the Director relied in promulgating § 9(d), to support this portion of the order.
In view of our disposition of this appeal, we find no need to comment on the issue of whether the company is a "place of public accommodation" under the law within the context of this case.
The order appealed from shall be modified to delete § 9(d) therefrom. As so modified, it affirmed.
NOTES
[1] The appeal is actually by the company and its chief (Liddy) and president (Delgado), who were also found to have violated the statute here involved. For the purposes of this opinion, however, although our determination involves and affects these individuals, except where specifically otherwise indicated, we shall refer only to the company in our discussion.
[2] N.J.A.C. 13:12-1.1 was enacted after the act of discrimination here alleged. It, however, substantially mirrors the provisions of the Director's order relating to these amendments. One of the required amendments, however, as indicated below, presents a problem as to the Director's authority with respect thereto.
[3] N.J.S.A. 10:5-12(a), 10:5-4 and 10:5-5(e), relating to unlawful employment practices and discrimination, and the definition of "employer," were amended, effective June 6, 1977 (L. 1977, c. 122); but these amendments, even if applicable, do not contravene the conclusions we have reached in this case.
[4] With respect to the statute of limitations question, in addition to the cases cited by the hearing examiner, see Decker v. Elizabeth Bd. of Ed., 153 N.J. Super. 470 (App. Div. 1977), certif. den. 75 N.J. 612 (1978). As to the question of whether sex is a bone fide qualification for being a firefighter under N.J.S.A. 10:15-12(a), in addition to the cases cited by the hearing examiner, see Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).