845 F.2d 108
 46 Fair Empl.Prac.Cas. 1433,
46 Empl. Prac. Dec. P 37,988
Christina Pagano FLOCA, Plaintiff-Appellant,
v.
HOMCARE HEALTH SERVICES, INC., Home Health and Family Care,
Inc., and A. Jackson Health Care Systems,
Defendants-Appellees.
 No. 87-1468.
 United States Court of Appeals,
Fifth Circuit.
 May 18, 1988.
 
 Jon R. Ker, Hewitt, Tex., for plaintiff-appellant.
 John A. Stephens, Waco, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before THORNBERRY, WILLIAMS, and DAVIS, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Appellant, Christina Pagano Floca, successfully proved employment discrimination in her Title VII suit. She appeals, however, because the district court declined to award front pay and back pay and awarded only nominal damages. Because we believe the district court wrongly applied the burden of proof on the issue of mitigation of damages and erroneously determined that a job as a registered nurse is substantially equivalent to a job as a director of nursing, we vacate and remand on the issue of the denial of back pay. We affirm the denial of front pay, however, because Floca voluntarily removed herself from the job market to enter school to learn a new career.
 
 
 2
 * Christina Pagano Floca began working for Home Health and Family Care (the "Agency") as its Director of Nursing on December 12, 1980. She was 28 years old, had a Masters Degree in Nursing, and had completed half of the requirements for her doctoral degree at the University of Texas. Her job duties were largely public relations, but also included hiring hospital staff, training the staff, and supervising nurses and nurse's aids. Prior to this job, Floca had worked as a staff nurse in several hospitals. She had never previously worked as a nursing director.
 
 
 3
 In early 1981, Floca discovered that she was pregnant. She informed her boss, Mrs. Jackson, of the pregnancy on February 2. Jackson responded by informing Floca that she would no longer be able to represent the Agency in the community. Jackson further told her that she could continue to work only until June 1, or until August 1 if she would train her own replacement. No reason other than the pregnancy was given as to why Floca could not continue to work. Floca resigned on June 20, and her letter of resignation stated that she did not leave voluntarily. She was not eligible for the Agency's maternity leave policy, which required at least one year of prior full-time employment.
 
 
 4
 Floca filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") on August 25, 1981. The EEOC issued its Notice of Right to Sue Letter on November 22, 1985. Thus, Floca filed this Title VII action.
 
 
 5
 The case was tried before the district court, without a jury, in April 1987. In May 1987, the court issued its memorandum opinion. The district judge found that "it would be difficult to create a maternity leave policy which would impose a harsher penalty on employees" than the Agency's. He also found that after Floca had established her prima facie case by proving the maternity policy's discriminatory effect on women, the defendants had been unable to present any evidence justifying the policy. Additionally, the judge found that Floca's pregnancy was a "substantial motivating factor" in the decision to fire her. Thus, the district judge held that the defendants were liable under Title VII. The defendants do not appeal this decision.
 
 
 6
 Although the district judge found the defendants liable under Title VII, he nonetheless awarded Floca only nominal damages. Regarding damages, the judge wrote:
 
 
 7
 The Plaintiff also seeks an award of back pay in this suit. In order to be entitled to back pay, an employee must make a "reasonable effort" to find other suitable employment. 42 U.S.C. Section 2000e-5(g).... In the present case, Mrs. Floca testified that she made a reasonable effort to seek other employment, but that she could not find comparable work. The Court, however, finds that Plaintiff's testimony that she used reasonable diligence to find other employment is not credible. Additionally, the Court further finds that Mrs. Floca voluntarily removed herself from the job market in order to begin and raise a family. As such, the Court is of the opinion that an award of back pay is inappropriate because Plaintiff has completely failed to mitigate damages.
 
 
 8
 ... In this suit, the Court believes an award of front pay is not proper for the same reasons stated in denying the Plaintiff back pay.
 
 
 9
 Floca appeals the denial of back pay and front pay.
 
 II
 
 10
 Back pay is awarded to put victims of unlawful discrimination in the position in which they would have been but for the discrimination. Sellers v. Delgado Community College, 839 F.2d 1132, 1136 (5th Cir.1988). In Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 2370-71, 45 L.Ed.2d 280 (1975), the Supreme Court held that although awarding back pay is discretionary, such discretion must be exercised in light of the objectives of Title VII. The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination. Id. 95 S.Ct. at 2371-72. It is clear, however, that Title VII claimants have a duty to minimize their damages by seeking other suitable employment. Sellers, 839 F.2d at 1136.
 
 
 11
 Once a plaintiff has made out a prima facie case of discrimination and has presented evidence on damages, the burden of proof shifts to the defendant to prove that substantially equivalent employment positions were available and that the claimant failed to use reasonable diligence in seeking those positions. Sellers, 839 F.2d at 1138; Rasimas v. Michigan Department of Mental Health, 714 F.2d 614, 623 (6th Cir.1983).
 
 
 12
 The trial judge based his determination that Floca had failed to mitigate damages on three factors: his conclusion that Floca's testimony about her efforts to find other work was not credible, his fact determination that she removed herself from the job market to raise a family, and evidence that she could easily have found a nursing job. Floca contends that the conclusion that she could easily have found a nursing job is irrelevant, because a nursing job is not substantially equivalent to her supervisory job with the defendant. Also, she argues that the judge improperly placed the burden of proof on the mitigation issue on her. Additionally, she states that the trial judge improperly took judicial notice of the availability of nursing jobs.
 
 
 13
 Floca testified that she sought various job positions, but that she would not accept a position as a registered nurse (RN) because it would be frustrating and underpaid. She asserts that an RN staff position clearly is not the substantial equivalent to her previous job, which involved hiring, firing, training, and supervising staff nurses.
 
 
 14
 The defendants assert that they proved the availability of other job opportunities. One witness testified that there was no difficulty finding nursing positions in the Bell County area and that there were jobs for licensed vocational nurses (LVNs), RNs and supervisory nursing positions. Another witness testified that she could have obtained employment as an RN in 1981 in the Bell County area. The defendants also note that although Floca stated that she would not accept a position as a registered nurse (RN) because it would be frustrating and underpaid, she had previously worked as a staff nurse on several occasions after receiving her masters degree.
 
 
 15
 The duty to mitigate requires only that the claimant accept "substantially equivalent employment." Sellers, 839 F.2d at 1136-38. Substantially equivalent employment is employment that "affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." Id. at 1138 (emphasis added) Two jobs are not "substantially equivalent" merely because they offer similar salaries. Id.; Williams v. Albemarle City Board of Education, 508 F.2d 1242, 1243 (4th Cir.1974). The employer must prove that "employment was available in the specific line of work in which the employee was engaged." Ballard v. El Dorado Tire Co., 512 F.2d 901, 906 (5th Cir.1975) (emphasis in original). In Ballard, this court required that the employer show that managerial work was available to the plaintiff who worked in a managerial capacity for the defendant. Id. In Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 102 S.Ct. 3057, 3065 n. 14, 73 L.Ed.2d 721 (1982), the Supreme Court stated that claimants are not required to take lesser or dissimilar work. Claimants also are not required to take a demotion or a demeaning position. Id. 102 S.Ct. at 3065. Additionally, although the personal characteristics of the claimant, including prior work experience, may have some effect on the type of job the claimant must accept, the mitigation duty generally requires only that the claimant seek employment substantially equivalent to the job that was wrongfully terminated. The duty is not to accept a job substantially equivalent to jobs previously held. Thus, because Floca was wrongfully terminated from a supervisory position, she would not be required to accept a job as a staff RN.
 
 
 16
 The only evidence that supervisory positions were available for Floca was Amanda Tatum's testimony that there were jobs for LVNs, RNs and supervisory nursing positions in the county. We cannot say that the district judge relied on the defendants' one witness who testified about the availability of supervisory jobs to find that the defendants met their burden to prove the existence of jobs substantially equivalent to a director of nursing. Rather, the opinion shows that the judge thought that Floca had a duty to accept a job as an RN. He stated, for example, that "[t]he evidence is, the Court finds, and the Court knows anyway, that there were nursing jobs available...."[1] Additionally, the district judge's opinion appears to incorrectly place the burden of proof on the plaintiff on this issue. The major reason given for the finding of failure to mitigate was that the judge did not believe Floca's testimony that she could not find comparable work. The lack of credibility of Floca's testimony, however, is insufficient to meet the defendants' burden of proof on this issue. Thus, we vacate the decision to deny back pay and remand to the district court for a determination of whether the defendants have met their burden of proving the availability of supervisory jobs substantially equivalent to a director of nursing.
 
 III
 
 17
 Floca next contends that the district court erred in failing to award front pay. Front pay is a remedy for the postjudgment effects of discrimination. It compensates the plaintiff for lost income from the date of the judgment to the date the plaintiff obtains the position she would have occupied but for the discrimination. Front pay is awarded to meet the goal of Title VII to make whole the victims of discrimination. Front pay, however, is governed by the district court's discretion and is not always appropriate. Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir.1985). Whether it should be awarded depends on whether it will help meet the goals of Title VII. Id.
 
 
 18
 Floca began law school before the judgment in this case was entered. The defendants argue that she therefore could not suffer any future harmful effects of the 1981 discrimination. The Eleventh Circuit has held that when a person enters law school, that person is no longer "ready, willing, and available for employment." Miller v. Marsh, 766 F.2d 490, 492 (11th Cir.1985); see also Taylor v. Safeway Stores, Inc., 524 F.2d 263, 268 (10th Cir.1975) ("[W]hen an employee opts to attend school, curtailing present earning capacity in order to reap greater future earnings, a back pay award for the period while attending school also would be like receiving a double benefit."). Thus, the court held that the district court was within its discretion in not awarding the claimant damages for that period.
 
 
 19
 We agree with this reasoning. The time a person spends in school learning a new career is an investment for which future benefits are expected. The student is compensated for the time in school by the opportunity for future earnings in the new career and thus suffers no damages during that period. To allow front pay for this period would compensate the person twice. Therefore, the district court was clearly within its discretion in denying damages for the period after Floca entered law school. Her opportunity for future earnings suffices to make her whole, thus meeting the goal of Title VII.
 
 IV
 
 20
 For the reasons stated in this opinion, we VACATE the judgment denying back pay and REMAND for a redetermination of whether an award of back pay is proper. We AFFIRM the denial of front pay.
 
 
 
 [1]
 Floca asserts that this language shows that the district court improperly took judicial notice of the availability of nursing jobs. However, the words "and the Court knows anyway" appear to be merely an off-hand comment and do not indicate that the judge relied on his personal knowledge in reaching his decision